PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY R. SABINO, | ) | CASE NO.   1:08CV1580 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social

Security Administration ("Agency") denying the application of Plaintiff Anthony R. Sabino for

Supplemental Security Income benefits.  The parties have consented to the jurisdiction of the

undersigned Magistrate Judge.  ECF No. 11.

Having found that the Agency's denial of benefits was based upon substantial evidence

and in accordance with proper legal standards, the Court affirms the final Agency decision.

### I.  Overview

At the time of the hearing before the Administrative Law Judge ("ALJ"), Plaintiff

Anthony R. Sabino ("Sabino") was 52 years old and had earned the equivalent of a high school

diploma in 1981.  (Tr. 304.)  He does not have any past relevant work experience.  (Tr. 14.)

Sabino based his application for benefits on the allegedly disabling conditions of Bell's Palsy,

(1:08CV1580)

ulcerative colitis, lumbar disease, back problems, and chronic headaches with an onset date of January 12, 2004. (Tr. 55.)

The ALJ found that Sabino had not engaged in substantial gainful activity at any time relevant to his claim for benefits. (Tr.16.) The ALJ also found that Sabino suffers from severe impairments of the spine, colitis, and personality disorder not otherwise specified ("NOS"). (Tr. 19.) He determined, however, that Sabino does not suffer from an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 20). After considering the record in its entirety and consulting with Lynn Smith, a vocational expert ("VE"), the ALJ concluded that although he could not perform the full range of light work, Sabino could perform some light work and was therefore not disabled. (Tr. 20-21.)

After reviewing the record as a whole, including: (1) the medical evidence presented; (2) Sabino's testimony and statements made to his medical care providers; and (3) the legal standards applied, the Court finds that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards.

## II. Procedural History

Sabino filed an application for Supplemental Security Income ("SSI") on January 12, 2004 alleging a disability due to Bell's Palsy, ulcerative colitis, lumbar disease, back problems, and chronic headaches. (Tr. 55.) The claim was initially denied on April 7, 2004 and denied again upon reconsideration on June 30, 2004. On June 27, 2004, Sabino filed a request for an administrative hearing before the ALJ which was held on June 19, 2006. (Tr. 14.) The ALJ issued a decision denying benefits on July 21, 2006, indicating that the denial was based on

(1:08CV1580)

Sabino's lack of an impairment that meets or medically equals a Listing and his ability to engage in some range of light work.  (Tr. 19-20.)  Sabino filed a request for a review of the hearing decision which was denied on May 2, 2008.  Upon the denial by the Appeals Council, the decision of the ALJ dated July 21, 2006 became the final decision of the Commissioner.  Seeking a review of the Agency's final decision denying him benefits,  Sabino timely filed a Complaint with this Court asserting the following issues:

> 1. Whether the ALJ failed to adequately assess whether Sabino's impairments meet or equal the medical listings of impairments
>
> 2. Whether a complete assessment of the record reveals that Sabino meets or equals the medical listings and that the ALJ's cursory finding at step three of the sequential evaluation is erroneous
>
> 3. Whether the ALJ erred in determining that  Sabino's testimony was not credible
>   a. Whether the ALJ inappropriately evaluated  Sabino's complaints of pain
>   b. Whether the ALJ's RFC finding is inaccurate because the impact of Sabino's pain was not properly considered
>
> 4. Whether the ALJ erred in relying upon the incorrect testimony of the Vocational Expert at step five of the sequential analysis

ECF No. 16 at 2, 5, 11, & 13.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health*

(1:08CV1580)

*& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the

ALJ are conclusive if they are supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within

which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d 535, 545

(6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The ALJ's

decision must be affirmed if it is supported by substantial evidence even if the reviewing court

would have decided the matter differently, and even if substantial evidence also supports a

different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999);

*Mullen*, 800 F.2d at 545. "Even if supported by substantial evidence, however, a decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.2006).

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The district

court may look into any evidence in the record, regardless of whether it has been cited by the

ALJ. *Mullen*, 800 F.2d at 545. The reviewing court, however, may not try the case *de novo*,

resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at

681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### IV. Standard for Establishing Disability

To establish disability under the Act, a claimant must show that she is unable to engage in

-4-

(1:08CV1580)

substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).   The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has an impairment that meets the listing and the duration requirement.  Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to

-5-

(1:08CV1580)

perform past relevant work.  The claimant bears the burden of proof at steps one through four.

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the

burden shifts to the Commissioner to identify "a significant number of jobs in the economy that

accommodate the claimant's residual functional capacity (determined at step four) and vocational

profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and her age, education,

and work experience to determine whether the claimant may work.  Even if the claimant's

impairment does prevent her from doing her past relevant work, if other work exists in the

national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v.*

*Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25

(2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R.

§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson*

*v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the

ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of

proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a);

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step

five, which determines whether the claimant is able to perform work available in the national

economy").  The burden of proof regarding the establishment of disability onset date lies with

the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Moreover, the claimant has the burden of providing detailed medical evidence allowing

-6-

(1:08CV1580)

the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986)*.  Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations.  20 C.F.R. § 404.1512(c).

<h3 style="text-align:center">V.  Analysis</h3>

### A.  The ALJ Adequately Assessed Whether Sabino's Impairments Met or Equaled the Medical Listings of Impairments and a Complete Assessment of the Record Reveals that Sabino does not Meet or Equal a Medical Listing

At the Third Step of the sequential evaluation, an ALJ determines whether the claimant has an impairment that meets or equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If an impairment exists that meets the description of a Listing or its equivalent, the claimant will be found disabled.  *See* 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").  The Supreme Court has emphasized that "for a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria." *Sullivan v. Zebley, 493 U.S. 521, 530 (1990)* (emphasis added).  Significantly, a claimant has the burden of showing that he has satisfied each individual requirement of a Listing.  *Thacker v. Soc. Sec. Admin., 93 Fed. Appx. 725, 728 (6th Cir. 2004)* ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.").  "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc.*

(1:08CV1580)

*Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citations omitted).

The ALJ determined that Sabino suffers from severe disorders of the spine, colitis, and an unspecified personality disorder but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 19-20.)  Sabino concedes that he does not meet the Listing for Crohn's disease or his personality disorder, NOS.  ECF No. 19 at 12.  Sabino instead argues that he meets Listings 1.02 (ankylosing spondylitis) and 14.09 with a reference to 14.02 (ankylosing spondylitis combined with Crohn's disease and his mental impairment).  ECF No. 16 at 5.

Listing 1.02 reads as follows:

*Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g. sublaxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:

A. Involvement of one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00(B)(2)(b).

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (2006).

An x-ray of Sabino's lumbar spine indicated that Sabino had osseous ankylosis of the sacroiliac joints.  (Tr. 202.)  A CT scan of the lumbar spine showed osseous ankylosis bilaterally with the most likely cause being ankylosis spondylitis.  (Tr. 203.)  X-rays of the abdomen and the lumbar spine taken in September 2004 again confirmed ankylosis of the sacroiliac joints.  (Tr. 199-200.)  During a visit with orthopedist, Dr. Stabile, on March 23, 2004, Sabino complained of right leg pain. (Tr. 181.)  The aforementioned medical evidence indicating ankylosis of the

-8-

(1:08CV1580)

sacroiliac joint does not include any discussion of the condition's effect on Sabino's hips, knees, ankles, or any other weight-bearing joint as required by the regulation.

Additionally, Sabino has failed to demonstrate that the joint impairments resulted in an inability to ambulate effectively.  Sabino reported that it hurts too much to walk, he cannot run or jump, and that climbing stairs is painful.  (Tr. 75, 77, 82).  He also reported, however, that with the aid of a cane he can walk for fifteen minutes before having to stop due to the pain.  (Tr. 72, 79.)  Dr. David A. Rath's residual functional capacity ("RFC") evaluation indicated that Sabino could walk for at least six hours during an eight-hour workday with normal breaks.  (Tr. 136.) The Residual Functional Capacity evaluation also indicated that Sabino's examinations showed that he had normal strength and sensation.  (Tr. 139.)  A consultative examination by Dr. Brian Brocker yielded a finding that Sabino walked normally.  (Tr. 164.)  Most importantly, two consulting physicians, Dr. Rath and Dr. Stock, opined that Sabino met no Listings.  (Tr. 34-35, 140.)

In order to establish that an impairment matches a Listing, the claimant must prove his condition meets all of the specified medical criteria.  An impairment that meets some, but not all of the medical criteria will not qualify under a Listing, no matter how severe the condition.  *See Elam ex rel. Golay*, 348 F.3d at 125.  In the instant case, Sabino has failed to demonstrate that his condition affects a requisite weight-bearing joint and that the impairment to the joint resulted in an inability to ambulate effectively.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (2006).

Sabino also suggests that the ALJ committed reversible error because the ALJ did not provide an adequate explanation of his consideration of the Listings.  ECF No. 16 at 3.

(1:08CV1580)

Defendant argues the opposite stating that the ALJ noted Sabino's impairments and found after a

review of the entire record that Sabino did not have an impairment or combination of

impairments that met or equaled the Listings.  ECF No. 19 at 11.  The Sixth Circuit has held that

an ALJ is not required to provide an elaborate articulation of his thought process when

considering the Listings, provided the ALJ indicated his consideration of the entire record

concerning the alleged impairments.  *See Gooch v. Sec'y of Health & Human Servs.*, 833, F.3d

589, 592 (6th Cir. 1987).

Sabino argues (without providing direct citation in support) that the 1996 SSR's

overruled the Sixth Circuits' ruling in *Gooch*.  ECF No. 21 at 3.  The Court disagrees.  While the

ALJ's written decision is certainly not *verbose*, the Court finds that it is, however, sufficient to

meet the Agency regulations of informing the claimant of the decision and Agency reasoning and

providing an adequate record for judicial review.  At the beginning of his written decision, the

ALJ declared "The Administrative Law Judge has carefully considered all the documents

identified in the record as exhibit, the testimony at the hearing and arguments presented." (Tr.

13.)  He bookends Sabino's medical history and a discussion of the severity of his impairments

with addition pledges that he has considered the evidence in the record.  He repeats the refrain

that the "evidence establishes" and continues to describe evidence in the record in support of his

decision.  The ALJ introduces his finding regarding whether Sabino meets or equals a Listing, by

stating "[t]he objective medical evidence in the record establishes."   He concludes his decision

with findings, including, "[T]he medical evidence establishes that the claimant has severe

disorders of the spine, colitis, and personality disorder, NOS, but that he does not have an

(1:08CV1580)

impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 20.)

In sum, the ALJ acknowledged that the objective medical evidence on record established that Sabino suffers from severe disorders of the spine, colitis, and unspecified personality disorder, but that these impairments did not reach the level of severity necessary to meet or equal any Listing. (Tr. 17.) While Sabino cites to the 1996 "Process Unification Rulings" in his Reply to Defendant's Brief, these rulings still reserve the ultimate determination of whether a claimant meets or equals a Listing to the Commissioner or as in this case, the ALJ as the final decision maker. In this case, the ALJ outlined the evidence of record that he considered in reaching his conclusion that Sabino does not suffer from a condition that meets or medically equals a Listing with sufficiently articulated reasoning.

Sabino failed to carry his burden of proving that he met all of the criteria of the applicable Listings, the ALJ did not err in concluding that Sabino did not suffer from a qualifying condition. His decision is supported by substantial evidence. Additionally, the ALJ provided an adequate — albeit the minimum required — explanation for his decision and also indicated the evidence of record upon which he based his decision. Therefore, the Court finds that the ALJ adequately assessed whether Sabino's impairment(s) meets or equals the Listings and that substantial evidence exists in the record to support the ALJ's finding that Sabino's impairment(s) did not meet or equal the Listings.

### 1. The ALJ Properly Evaluated and Denied Sabino's Impairment Without the Aid of a Medical Expert

Sabino claims that, "in this case it is apparent that the ALJ should have called a medical

-11-

(1:08CV1580)

expert to help him analyze the evidence in this case in order to determine whether Sabino's

impairments met or equaled the listings of impairments." ECF No. 16 at 10.  Sabino notes that

SSR-96-6p states an ALJ must call a medical expert when additional medical evidence is

received that may change the state agency physician's findings that the impairment(s) does not

meet the Listings. Sabino also notes that the Hearing Appeals and Litigation Law Manual

(HALLEX), is instructive in that it mandates that a medical expert is needed "to evaluate and

interpret background medical test data." ECF No. 16 at 10.  Sabino points out that HALLEX

lists several instances where an ALJ "may" need to obtain a Medical Expert's opinion.  ECF No.

16 at 11.  Sabino admits that the language in these manuals is discretionary, but insists that the

HALLEX manual "very urgently counseled" the ALJ to call an ME to testify."  ECF No. 16 at

11.

It is within the ALJ's discretion "to determine whether further evidence, such as

additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th

Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not

give us sufficient medical evidence about your impairment for us to determine whether you are

disabled or blind, we *may* ask you to have one or more physical or mental examinations or

tests.")) (Emphasis in original).

As Sabino openly admits, the rules he cites are generally discretionary and the ALJ was

not required to consult with a medical expert in determining that Sabino did not medically equal

(1:08CV1580)

a listing.[1]

Sabino suggests, however, that "when an updated medical judgment as to medical equivalence is required at the administrative  law judge level . . . the administrative law judge must call on a medical expert." pertains to him.  ECF No. 16 at 10.  The Court disagrees.  The record does not reflect that the ALJ was of the opinion that the state agency consultant's findings could change; there is no such state agency finding.

Additionally, HALLEX, the Agency's Hearing, Appeals and Litigation Law Manual, prescribes when an ALJ must obtain the opinion of a medical expert, to wit:

─────────────────

[1] SSR 96-6p states, in pertinent part, that:
When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.  However, an administrative law judge must obtain an updated medical opinion from a medical expert in the following circumstances:

* When no additional medical evidence is received, but *in the opinion of the administrative law judge* or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

* When additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert.

SSR 96-6p (Emphasis added).

-13-

(1:08CV1580)

B. When the ALJ Must Obtain ME Opinion

The ALJ must obtain an ME's opinion, either in testimony at a hearing or in responses to written interrogatories:

[1] When the Appeals Council or a court so orders.

[2] To evaluate and interpret background medical test data. (See I-2-5-14 D., Medical Test Data.)

[3] When the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing.

Hallex I-2-5-34.  None of the three mandatory provisions apply to Sabino, and thus, the Agency's own manual did not require the ALJ to consult a medical expert.

Accordingly, the Court finds that the ALJ did not err by not consulting a medical expert in determining that Sabino did not medically equal a listing

**B.   The ALJ Properly Determined the Credibility of Sabino's Complaints of Pain**

The ALJ is required to consider all symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence in determining whether a claimant is disabled.  20 C.F.R. § 404.929(a).  The ALJ must also consider the claimant's own statements about her pain and other symptoms, as well as the effect those symptoms have on the claimant's daily activities and ability to work.  *Id.*  Credibility determinations regarding a claimant's subjective complaints rest solely with the ALJ.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393. 395 (6th Cir. 2004).

The Sixth Circuit has created a two-part test to evaluate subjective complaints of pain.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986).  According to

-14-

(1:08CV1580)

*Duncan*, the ALJ should initially determine "whether there is objective medical evidence of an underlying medical condition." *Id.* If so, then the ALJ determines "whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or . . . whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

Title 20 C.F.R. § 416.929(c)(1) provides: If the medical signs or laboratory findings show that a claimant has a "medically determinable impairment that could reasonably be expected to produce" his or her symptoms, such as pain, then the court evaluates the intensity and persistence of the claimant's symptoms to determine how the symptoms limit the claimant's capacity for work.  In conducting such an evaluation, the court considers objective medical evidence and other evidence.  In particular, the court may consider the claimant's history, the signs and laboratory findings, statements from the claimant, his or her treating or non-treating source, or other persons, and medical opinions.  Furthermore, the Court will consider the following seven factors as stated in 20 C.F.R. § 416.929(c)(3)[2]

1. Daily activities;
2. Location, duration, frequency, and intensity of pain or other symptoms;
3. Precipitating and aggravating factors;
4. Type, dosage, effectiveness, and side effects of medication;
5. Treatment, other than medication;
6. Other measures used to relieve pain; and
7. Other factors relating to function limitations and restrictions.

In determining the credibility of a claimant's statements, the ALJ must include specific

_____

[2]  The ALJ is not required to analyze all seven factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.,* 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).

(1:08CV1580)

reasons "supported by evidence in the case record, and must be sufficiently specific to make clear

to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reason for the weight." SSR 96-7p; *see also Cross*, 373 F.

Supp.2d at 733.  Social Security Regulation 96-7p further instructs that "[t]he finding on

credibility of an individual's statements cannot be based on an intangible or intuitive notion

about an individual's credibility.  The reasons for the credibility finding must be grounded in the

evidence and articulated in the determination or decision."

Sabino argues that the ALJ discussed none of the seven factors that he was required to

consider in assessing Sabino's credibility.  ECF No. 16 at 12.  Sabino also argues that the ALJ

should have analyzed his testimonial credibility through a multiple sclerosis lense even though

Sabino does not suffer from multiple sclerosis.  ECF No. 16 at 13.  The Court disagrees with

both arguments.

The ALJ determined that the medical evidence in the record documented "the existence

of an impairment(s) that could reasonably be expected to produce symptoms such as pain and

fatigue."  (Tr. 18.)  However, the ALJ found that Sabino's "allegations of the intensity,

persistence, and functionally limiting effects of the symptoms are not substantiated by the

objective medical or other evidence in the case record."  (Tr. 18.)  The ALJ acknowledged that

the objective medical evidence indicated that Sabino suffered from degenerative disc disease of

the lumbar spine with ankylosing spondylitis.[3]  (Tr. 18.)

--------

[3]  The record contains no evidence that Sabino has multiple sclerosis nor did any physician of record equate Sabino's symptoms with multiple sclerosis.  Moreover, Sabino does not direct the Court to case law that supports the proposition that a court's credibility analysis

-16-

(1:08CV1580)

The ALJ discussed the location, duration, frequency, and intensity of Sabino's pain and fatigue.  (Tr. 16 & 18.)  The ALJ then determined that Sabino's complaints of debilitating pain and fatigue were inconsistent with the objective medical evidence.  Dr. Cayavec, Sabino's treating physician, documented that Sabino had normal deep tendon reflexes, normal strength, and normal sensation in all of his examinations, with the exception of one.  (Tr. 107-33, 238-67.) In a Physical Residual Functional Capacity Assessment completed by Dr. David Rath in February 2004, Dr. Rath called Sabino's statements regarding the alleged effect of his symptoms on his ability to function "partially credible."  (Tr. 139).  Dr. Rath noted that Sabino claimed he was only able to walk for fifteen minutes and sit for twenty minutes, which is in direct contradiction to his exam results that indicated he had normal strength and sensation.  (Tr. 139.)  Dr. Rath also indicated that Sabino's complaints of neck and shoulder pain were not supported by the examination reports in Sabino's file.  (Tr. 139.)  The aforementioned opinions of Dr. Rath were affirmed by Dr. Michael Stock on June 25, 2004.  (Tr. 140.)

The ALJ also considered the prescription medications used to treat Sabino's conditions. (Tr. 15, 16, & 18.)   Dr. Cayavec routinely prescribed Motrin and Vicodin to treat Sabino's pain. (Tr. 107-33.)  Dr. Cayavec also frequently prescribed Ascecol and Lomotil for treatment of Sabino's colitis.  (Tr. 107-33.)  The record did not include any complaint by Sabino that his medications were ineffective at treating his conditions.  In fact, his prolonged use of the same medications suggests that the medications provided adequate relief of Sabino's symptoms.  Dr.

---

should treat ankylosing spondylitis the same as multiple sclerosis.  Therefore, the Court will not entertain Sabino's suggestion to do so.

(1:08CV1580)

Cayavec consistently indicated that the medications helped reduce Sabino's pain and helped him
to perform activities of daily living.  (Tr. 107. 238. 249. 251, 258, 263, 267.)  Additionally, the
ALJ considered other non-medicinal treatments of Sabino's pain.  (Tr. 18.)  Dr. Cayavec
frequently suggested heat and rest to relieve Sabino's symptoms.  (Tr. 107, 238-67.)

The record also included, as the ALJ noted, evidence regarding Sabino's daily activities.
(Tr. 15.)  Sabino reported that his activities included feeding his dogs, doing some of the
household chores, doing some cooking, and spending time with his only friend.  (Tr. 144.)
During the administrative hearing in June 2006, Sabino testified that a major portion of his day is
spent on the couch, on the chair, and on the floor because he is unable to do anything.  (Tr. 305.)
As late as July 2005, however, Sabino was capable of walking his dog, a Rottweiler.  (Tr. 245.)
In March 2005, Sabino possessed enough strength to break his hand upon striking a car window.
(Tr. 252.)  The latter two activities demonstrated an inconsistency with Sabino's statements
about his pain.

It is not the function of a reviewing court to determine the credibility of the claimant.
*Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  Discounting
credibility to a certain degree is appropriate where an ALJ finds contradictions among the
medical reports, claimant's testimony, and other evidence.  *Walters v. Comm'r of Soc. Sec.,* 127
F.3d 525, 531 (6th Cir. 1997).  After reviewing the ALJ's written decision and all other relevant
evidence in the record, the Court finds that substantial evidence exists to support the ALJ's
finding discrediting Sabino's subjective statements of pain.  The ALJ, observed the Agency
Regulations, discussed four of the seven required factors in his decision and therefore considered

-18-

(1:08CV1580)

all requisite evidence in rendering his determination that Sabino's testimony was not credible.

### C.  **The ALJ Properly Relied Upon the Testimony of the Vocational Expert**

Sabino's Residual Functional Capacity limited him to "simple repetitive tasks which are low stress with no production quotas, minimal interaction with the public and coworkers in that the interaction is superficial, nonconfrontational, nonarbitrational, and nonnegotiable."  (Tr. 20.) When presented with a hypothetical question involving a person with Sabino's impairments, the Vocational Expert ("VE") responded that the person could perform work as a routing clerk, ticket seller and stock checker.  (Tr. 16.)  Those jobs require reasoning levels of two and three, respectively.[4]  The Vocational Expert described each of these jobs as "light" and "unskilled." (Tr. 16.)  She also found each job to exist in substantial numbers in the local, state, and national economies.[5]  (Tr. 16.)  Sabino argues these jobs require reasoning abilities he cannot satisfy

---

[4]       (1) Reasoning level of one, defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Wyatt v. Comm'r Soc. Sec*., 2009 WL 1658958, *2 n.2 (N.D. Ohio June 12, 2009).

(2) Reasoning level of two, requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Hackett*, 395 F.3d at 1176 (*citing* DOT, Vol. II at 1011).

(3)  Reasoning level of three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations." *Hackett*, 395 F.3d at 1176 (*citing* DOT, Vol. II at 1011).

[5]  The Vocational Expert found the jobs existed in the following quantities:
(1)  Routing Clerk - 800 locally; 3,000 State; 748,000 Nationally;
(2)  Ticket seller - 8,000 locally; 140,000 State; 3.4 million Nationally;
(3)  Stock checker - 1,700 locally; 150,000 State; 4.2 million Nationally.
(Tr. 16).

(1:08CV1580)

given his impairments.

Both parties cite to *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), in support of their respective positions. Sabino relies on the case to bolster his argument that simple, repetitive work is inconsistent with the requirements of occupations which require a reasoning level of three. ECF No. 16 at 15 (*citing Hackett*, 395 F.3d at 1176). The defendant relies on *Hackett*'s conclusion that a person limited to performing simple, repetitive tasks is indeed capable of also performing a job at reasoning level two. ECF No. 19 at 19 (*citing Hackett*, 395 F.3d at 1176).

Even assuming that simple, repetitive work is inconsistent with reasoning level of three type jobs, the disqualification of these types of jobs still leaves available to Sabino the reasoning level of two jobs identified by the vocational expert. This reasoning is not original to this Court. In *Birle v. Astrue*, 2008 WL 2967108, *18 (E.D.Mo.July 31, 2008), the Court found "[e]ven assuming, *arguendo*, that one could conclude that reasoning level three conflicted with the ALJ's limitation, the VE noted two jobs existing in substantial numbers in the local and national economies involving only reasoning level two, which has also been found to be consistent with limitation to 'simple and routine' tasks." Therefore, assuming, *arguendo*, even if Sabino were unable to perform reasoning level of three type jobs, the Vocational Expert identified a substantial number of reasoning level of two types jobs which are available in the state, local and national economies.

Further examination of the case law reveals that the compatibility of reasoning level of two jobs with an Residual Functional Capacity limitation of simple and repetitive tasks is a novel question for most circuits. As indicated above, the Tenth Circuit has decided that reasoning level

-20-

(1:08CV1580)

two jobs are compatible with simple and repetitive tasks. The Third Circuit has also adopted this

view. *See Money v. Barnhart*, 91 Fed. Appx 210, 215 (3d Cir. Feb. 25, 2004). The Sixth Circuit

has yet to decide this specific question.

    Sabino argues that the reasoning levels required by the jobs identified by the vocational

expert are inconsistent with his Residual Functional Capacity limitation of simple and repetitive

tasks and that he should be restricted to performing jobs with a reasoning level of one. ECF No.

16 at 14. Sabino relies primarily on two cases from the District of Maine that relied upon a

Northern District of California case, *Allen v. Barnhart*, 2003 WL 22159050 (N.D. Cal. Aug. 28,

2003). *See* ECF No. 16 at 16. Upon careful review, however, the Court finds the *Allen* court's

analysis is flawed because it is based on an incorrect quotation of the Dictionary of Occupational

Titles ("DOT").

> *Allen* states as follows:
>
> All of the named jobs except three, however, involved a reasoning level of two.
> Reasoning levels are found under the General Education Development ("GED") and
> reflect education obtained in elementary school, high school, or college. Dictionary
> of Occupational Titles, Appendix C. Reasoning level two requires the worker to be
> able to "[a]pply commonsense understanding to carry out ***detailed but involved
> written and oral instructions***" and to "[d]eal with problems involving a few concrete
> variables in or from standardized situations." Dictionary of Occupational Titles,
> Appendix C. *The need to follow "detailed" and "involved" instructions exceeds the
> ALJ's limitation of plaintiff to "simple, routine tasks." Such instructions are not
> simple and uncomplicated, or limited to one or two steps.*

*Allen v. Barnhart*, 2003 WL 22159050, at * 10 (Emphasis added). The DOT's reasoning level

two correctly reads: "Apply commonsense understanding to carry out detailed but *uninvolved*

written *or* oral instructions. Deal with problems involving a few concrete variables in or from

standardized situations." Dictionary of Occupational Titles, Appendix C, *available at*

-21-

(1:08CV1580)

http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM, September 29, 2009

(Emphasis added).  The *Allen* court quoted the DOT as "detailed but *involved*" as opposed to the

correct language, "detailed but *uninvolved*."  The misquote caused the erroneous analysis that

followed in that case.  Therefore, the Court is not persuaded by Sabino's citation to *Allen* nor is

the Court inclined to follow the *Allen* court's conclusion that simple and repetitive tasks should

be limited to performing jobs with a reasoning level of one.

     The Court instead finds the analysis in *Meissl v. Barnhart*, 403 F.Supp.2d 981 (10th Cir.

2005) to be well reasoned and persuasive.  The *Meissl* Court's analysis reads:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. This Court finds that it does not.
>
> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.
>
> A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.
>
> . . .

(1:08CV1580)

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii);; see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). See DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. See

-23-

(1:08CV1580)

> *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005)(holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004)("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:
>
>> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning. *Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

*Meissl*, 403 F.Supp.2d at 983-84.

At the threshold, the Sixth Circuit has recognized that "the reasoning development requirements, as well as some other development requirements, are 'merely advisory in nature.'" *Matelski v. Comm'r of Soc. Sec.*, 1998 WL 381361, *6 (6th Cir. June 25,1998) (Table).  The Sixth Circuit has also recognized that an ALJ may rely on vocational expert testimony that conflicts with certain aspects of the DOT.  *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).

A Vocational Expert is called by an ALJ to testify at a social security hearing to impart her vocational experience and expertise, not to read the DOT into the record or give definitions from the DOT by rote memorization.  This would be redundant and unnecessary.  In the instant matter, the Vocational Expert proved to be quite helpful as the DOT did not cover the "all

(1:08CV1580)

sit/stand" portion of the hypothetical.[6]  The Vocational Expert filled this gap with her experience. Even if there were an inconsistency between the Vocational Expert's testimony and the DOT greater than the "all sit/stand"option, Sabino has not pointed to any authority that the ALJ erred in his findings based upon the Vocational Expert's testimony, which went unchallenged by Sabino until after the ALJ issued his decision.  (Tr. 314-18.)  "As an initial matter, neither the ALJ nor the VE is required to follow the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 2009 WL 2877930 * 4 (6th Cir. Sept. 9, 2009) (*citing Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the dictionary's classifications."); *see also Conn*, 51 F.3d at 610 (finding ALJ may rely on vocational expert's testimony contrary to the DOT).

As importantly, it is within the province of the ALJ to determine the Vocational Expert's credibility.  *See Sias v. Sec'y of Health and Human Servs*, 861 F.2d 475, 480 (6th Cir. 1988). Credibility findings by the ALJ are entitled to substantial deference upon review.  *See King v. Heckler,* 742 F.2d 968 (6th Cir. 1984).  In the instant case, the Vocational Expert's answers were given in response to a hypothetical question that accurately portrayed Sabino's impairments, the

---

[6]    Q  Very well.  Ms. Smith, is your testimony consistent with the definitions in the Dictionary of Occupational Titles?
A  Yes, it is, Your Honor.
Q  Is your opinion modified at all by your own experience?
A  Yes, the all sit/stand would be by my experience because the Dictionary of Occupational Titles does not recognize that
ALJ: Very well. Counsel, questions?

(Tr. 314.)

-25-

(1:08CV1580)

ALJ could, therefore, justifiably rely on the Vocational Expert's conclusions.  *See Varley v. Sec'y of Health and Human Servs*, 820 F.2d 777, 781 (6th Cir. 1987); *Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987).

The Court finds that Sabino's Residual Functional Capacity limitation of  "simple repetitive tasks which are low stress with no production quotas, minimal interaction with the public and coworkers in that the interaction is superficial, nonconfrontational, nonarbitrational, and nonnegotiable," (Tr. 20.), is consistent with the ability to perform jobs classified under reasoning level two and three as identified by the Vocational Expert.

Based on the foregoing analysis, the Court finds that the ALJ did not err in relying upon the Vocational Expert's testimony in rendering his decision.

## VI. Conclusion

The Court finds the ALJ's decision that Anthony J. Sabino was not disabled and therefore not entitled to Supplemental Security Income benefits under the Act was based upon proper legal standards and supported by substantial evidence.  Therefore, the decision of the ALJ shall be AFFIRMED.

This matter is terminated on the docket of this Court.

IT IS SO ORDERED.

  September 29, 2009                                          s/ *Benita Y. Pearson*
Date                                                         Benita Y. Pearson
                                                             United States Magistrate Judge

-26-

(1:08CV1580)